IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAGMAR MARIE TODOROVA,

        Plaintiff,

v.                                                                   No. CV 17-0551 KRS

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE AND REMAND**

Plaintiff Dagmar Marie Todorova seeks review of the Commissioner's determination that she is not entitled to disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b), the Court has considered Ms. Todorova's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum, filed October 16, 2017 [Doc. 15], the Commissioner's response in opposition, filed November 16, 2017 [Doc. 17], and Ms. Todorova's reply, filed November 24, 2017 [Doc. 18]. Having so considered, the Court **FINDS and CONCLUDES** that Ms. Todorova's motion is not well taken and should not be granted.

## I. PROCEDURAL BACKGROUND

On August 26, 2013 Ms. Todorova filed an application for Social Security Disability Insurance (SSDI) benefits, alleging that she had been disabled since September 1, 2004, due to mitral valve replacement, reflex sympathetic dystrophy ("RSD") and mitral stenosis followed by

mitral valve replacement. [AR 110]. On February 28, 2014, it was determined that Ms. Todorova was not disabled and her claim was denied. [AR 39-44]. This determination was affirmed on July 31, 2014 [AR 45-52], and a subsequent hearing before an administrative law judge ("ALJ"), held on January 27, 2016, again ended in a denial. [AR 9-20]. The ALJ's decision became final when, on April 4, 2017, the Appeals Council denied Ms. Todorova's request for review. [AR 1-4]. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision). *See also* 20 C.F.R. § 404.900(a)(1)-(5).

## II. STANDARD

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). *See also* 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted). Even so, it is not the function of the Court to review Ms. Todorova's claims de novo, and the Court may

not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  ANALYSIS

### A.  Disability Framework.

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act further adds that for the purposes of § 423(d)(1)(A):

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

When evaluating a disability claim under this standard, the ALJ employs a five-step sequential process. 20 C.F.R. § 404.1520. In the first four steps, the claimant must prove that he or she (1) is not engaged in any substantial gainful activity; (2) has a severe physical or mental impairment, or combination of impairments, that meets the twelve month duration requirement; (3) has an impairment, or combination thereof, that meets or equals a listing in 20 C.F.R. pt. 404, subpt. P, App. 1; and (4) is unable to engage in past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). If the disability claim survives step four, the burden shifts to the ALJ to prove, at step five, that the claimant is able to adjust to other jobs presently available in

significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

Steps four and five are based on an assessment of the claimant's residual functional capacity ("RFC") which gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). *See also* 20 C.F.R. § 404.1545(a)(1).

**B. The ALJ's Determination**.

As detailed in the unfavorable decision underlying the case at bar, ALJ Burke engaged in the sequential analysis set forth above, first finding that Ms. Todorova had not engaged in substantial gainful activity since her alleged onset date of September 1, 2004. [AR 14]. He also determined that Ms. Todorova last met the insured status requirements on December 31, 2009. [*Id.*]. At step two, ALJ Burke found that Ms. Todorova had the following medically determinable impairments: mitral valve replacement, reflex sympathetic dystrophy and mitral stenosis. [*Id.*] ALJ Burke went on to find that Ms. Todorova did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities for twelve consecutive months through the date she was last insured, so her impairments were not severe. [*Id.*].

In making these conclusions, ALJ Burke indicated that he gave great weight to the opinion of the State agency medical consultants, stating that those consultants "concluded there was insufficient evidence to establish the presence of a 'severe' impairment during the period of adjudication." [*Id.*at 19]. ALJ Burke further found that Ms. Todorova's testimony concerning her symptoms was "… not entirely consistent with the evidence for the reasons explained in this

decision." (*Id.* at 15). ALJ Burke ended his analysis at step two of the five-step sequential analysis.

**C. Ms. Todorova's Challenges to the ALJ's Determination.**

Ms. Todorova bases her request for reversal and remand on contentions that ALJ Burke erred at step two of the sequential analysis by finding that her impairment or combination of impairments were not severe. As a sub-contention to her argument that ALJ Burke erred at step two of the sequential analysis, Ms. Todorova further argues that ALJ Burke failed to properly develop the record. Next, Ms. Todorova argues that ALJ Burke's finding that her testimony concerning the symptoms from which she suffers was not credible is not supported by substantial evidence in the record.

**D.    Discussion of Impairment Severity Determination.**

At the second step of the evaluation process, the ALJ must determine whether medical evidence shows an impairment or combination of impairments that is so severe that the claimant is unable to engage in any substantial gainful activity. Social Security Regulation ("SSR") 85-28, 1985 WL 56856 *3 (Jan. 1, 1985). A finding of "not severe" is made when the medical evidence "establishes only a slight abnormality . . . which would have not more than a minimal effect on an individual's ability to work." *Id.* The mere presence of a condition is not sufficient to meet the step two standard. *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (explaining that step two is designed to identify "at an early stage" claimants with such slight impairments that they would be unlikely to be found disabled even if age, education, and experience were considered). Determining whether an impairment is severe requires a "careful evaluation of the medical findings which describe the impairment[s] and an informed judgment about [their] limiting effects on the individual's physical and mental

ability[ies] to perform basic work activities." SSR 85-28, 1985 WL 56856 *4. Because Ms. Todorova's insured status expired December 31, 2009, [AR 12], she was obligated to prove that she was disabled prior to that date. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993).

At step two of the sequential analysis, ALJ Burke found that Ms. Todorova had the medically determinable impairments of mitral valve replacement, reflex sympathetic dystrophy and mitral stenosis, but that those impairments were not "severe" through the date Ms. Todorova was last insured. In making his determination, ALJ Burke relied upon Ms. Todorova's medical records, the reports of two state agency medical consultants, and the testimony of Ms. Todorova.

### 1. Medical Records.

ALJ Burke discussed the medical records submitted by Ms. Todorova, noting that a thorough review of the medical records for the period prior to December 2009, indicates that Ms. Todorova's physical examinations where within normal limits, showing no objective evidence of any functional limitations. [AR 16]. ALJ Burke indicated during the hearing that "the only two groups of providers that had treated" Ms. Todorova prior to her date last insured were "Kaiser in Sacramento from 2003 to 2005, and the Heart Institute from 2007 to 2008". [AR 36]. ALJ Burke noted that Ms. Todorova was on Coumadin therapy in 2003 and 2004, and did not experience prolonged symptoms or limitations from that treatment. [AR16]. In fact, the therapy progress notes indicate that Ms. Todorova tolerated the medication well, with few reported side effects or limitations. [*Id.*]. Clinical observations of Ms. Todorova during the 2003 through 2004 period noted that she maintained normal sensation across her bilateral upper and lower extremities and continued to walk with a normal gait and station. [*Id.*]. During a physical examination in December 2007, Ms. Todorova was noted to have done quite well during the seven years

following her mitral valve replacement, her blood pressure was well controlled, and an echocardiogram noted she was maintaining sinus rhythm. [*Id.*]. Ms. Todorova was also observed to walk with a normal gait and station and examination of her extremities did not reveal any signs of cyanosis or edema. [*Id.*]. There are no indications in the medical records that pain or Ms. Todorova's impairments were impacting Ms. Todorova's ability to carry out the daily functions of living. ALJ Burke reasonably concluded the medical records do not support a finding that Ms. Todorova's impairments prevent her from engaging in normal workplace activities.

### 2. Medical Source Opinions.

ALJ Burke also addressed the medical source opinions concerning Ms. Todorova's impairments. Regulations 20 CFR 404.1527 and 416.927 set forth detailed rules for evaluating medical opinions concerning an individual's impairment(s) offered by State agency medical consultants and other non-examining sources. ("Medical sources" are defined in 20 CFR 404.1502 and 416.902 as "treating sources," "sources of record" (i.e., medical sources that have provided an individual with medical treatment or evaluation, but do not have or did not have an ongoing treatment relationship with the individual), and "consultative examiners" for the Social Security Administration. *See* DI 22505.001B.3.) Paragraph (a) of these regulations provides that "medical opinions" are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite his or her impairment(s), and the individual's physical or mental restrictions. Paragraph (b) provides that, in deciding whether an individual is disabled, the adjudicator will always consider the medical opinions in the case record together with the rest of the relevant evidence.

Paragraphs (c), (d), and (e) then provide general rules for evaluating the record, with particular attention to medical and other opinions from acceptable medical sources. Paragraph (f) provides that findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists become opinions at the administrative law judge and Appeals Council levels of administrative review and requires administrative law judges and the Appeals Council to consider and evaluate these opinions when making a decision in a particular case.

The only medical source opinions addressing Ms. Todorova's impairments come from the State agency medical consultants. The State agency medical consultants opined, both initially [AR 39-44] and upon reconsideration [AR 45-52], that "there was insufficient evidence to establish the presence of a 'severe' impairment during the period of adjudication." The period of adjudication was from the onset date of September 1, 2004 to the date last insured of December 31, 2009. [AR14]. ALJ Burke gave great weight to the opinions of the State agency medical consultants, and provided his reasoning for doing so. [AR16-17]. Ms. Todorova does not challenge the weight given by ALJ Burke to the opinions of the two State agency medical consultants. The two State agency medical source opinions support ALJ Burke's determination that Ms. Todorova's impairments are not severe.

### 3. Evidence other than Medical Evidence.

In connection with the determination at step two that Ms. Todorova's impairments are not severe, ALJ Burke also considered Ms. Todorova's testimony concerning her functioning in daily life and the symptoms from which she alleges to suffer. "Credibility[1] determinations are peculiarly the province of the finder of fact ... and we will not upset such determinations [if they

---

[1] The Court notes that the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy and that this change is effective for all decisions made on or after March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, (March 16, 2016).

are] supported by substantial evidence." *Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir.1996). An ALJ must consider such factors as a claimant's daily activities; attempts to find relief; the type, effectiveness and side effects of medication; and factors that precipitate and aggravate the symptoms. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted). But we "do not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's subjective complaints, the dictates of *Kepler* are satisfied." *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000). In evaluating the effects of a claimant's symptoms, the ALJ must examine the entire record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4 (March 16, 2016). The ALJ also considers the factors set forth in 20 CFR § 404.1529(c)(3) and 416.929(c)(3) which include:

> 1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted).

ALJ Burke found Ms. Todorova's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [AR 15]. ALJ Burke cited Ms. Todorova's activities of daily living and noted that Ms. Todorova "…is capable if independently dressing herself and maintaining her personal hygiene…" [*Id.* at 16]. ALJ Burke went on to find that "[s]he is able to prepare and cook daily meals and performs light household chores like cleaning and laundry. When going out, the claimant states that she 'walks' and does not drive a car ….She is further able to shop in stores for her groceries and other personal needs, once a week for two hours." [*Id*]. ALJ Burke also noted that there was no evidence that Ms. Todorova had sought or received treatment for any of her alleged symptoms, and indicated that the lack of treatment suggests that the symptoms were not as limiting as Ms. Todorova alleged. [AR 15-16]. ALJ Burke found that there was no support for Ms. Todorova's claimed exertional limitations, and that her "functional reports" indicate she is capable of performing a full range of daily activities. [*Id.* at 16].

Ms. Todorova argues that the ALJ's credibility determination is flawed. In support of her argument, Ms. Todorova cites to evidence that might support a finding that she does have functional limitations as a result of her impairments. Ms. Todorova testified that prior to her date last insured, she had not "fully recovered" from the heart surgery performed in 2003. [AR25]. Ms. Todorova further testified that she had suffered from pneumatic fever as a six year old child. [AR 26]. She thought she lost sixty percent of her "brain power" after the heart surgery [AR 31], and though she formerly could solve any problem, she can't any longer [AR 32]. Ms. Todorova

also testified that she is suffering from RSD in her left foot, which causes a cold but burning pain that never goes away and is worse when she is stressed, that the doctors had told her she would not be able to walk as a result of the RSD, and that she has to walk with a cane. [AR28]. Ms. Todorova testified that she undertook research at the library and, as a result, underwent ultrasound treatment, which helped her to walk, though she now walks with a limp. [AR 28-29].

The evidence of problematic symptoms relied upon by Ms. Todorova to support her contention regarding the seriousness of her impairments comes only from her reporting, and is not supported by the medical records or by a medical source opinion. The only evidence of attempts by Ms. Todorova to obtain treatment for the symptoms of RSD during the period from date of onset though date last insured was Ms. Todorova's testimony that she took Tylenol, used a topical patch, and undertook some ultrasound treatments to treat the pain she alleges is associated with RSD. Accordingly, it is understandable that ALJ Burke found that Ms. Todorova's testimony concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

ALJ Burke relied on the medical evidence and on the evidence concerning Ms. Todorova's activities of daily living to justify his determination that Ms. Todorova's testimony concerning symptoms was not consistent with the objective medical evidence, and with the other evidence in the record. The Court acknowledges that some of the symptoms about which Ms. Todorova testified could support a finding that her impairments limited her ability to perform work-related activities. However, ALJ Burke found otherwise and it is not the function of the Court to review Ms. Todorova's claims de novo. Further, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass*, 43 F.3d at 1395 (10th Cir. 1994). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the

ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). The determination by ALJ Burke that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments" [AR 14] is supported by more than a "mere scintilla" of evidence. The evidence cited by Ms. Todorova that might support a finding contrary to that of ALJ Burke does not overwhelm the evidence relied upon by ALJ Burke to support his finding.

The problem with Ms. Todorova's position is that she simply failed to provide any medical evidence to support a finding that she suffered from a severe impairment for at least twelve consecutive months during the period from the alleged onset date of September 1, 2004 through the date last insured of December 31, 2009. To the contrary, the medical records demonstrate that Ms. Todorova had recovered from her mitral valve replacement. The Court finds that the ALJ's determination that Ms. Todorova was not suffering from disability during the period from the alleged onset date through the date last insured is supported by substantial evidence. Accordingly, the Court finds that the Commissioner's decision should be affirmed.

### E. Failure to Develop the Record

Ms. Todorova contends that ALJ Burke failed to develop the record to establish the seriousness of her impairments. In a social security disability case, the claimant bears the burden to prove her disability. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997). An ALJ has

the duty to develop the record by obtaining pertinent, available medical records which come to her attention during the course of the hearing. *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). The ALJ's duty to develop the record is heightened in the absence of counsel. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.1992). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167 (citations omitted). If the claimant does so, then the ALJ's duty to order a consultative examination arises. *Id*. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a non-exertional impairment." *Id*. A claimant establishes the presence of an issue requiring further investigation by submitting "some objective evidence...suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Id*.

However, the Commissioner has broad latitude in determining whether to order a consultative exam. *Hawkins*, 113 F.3d at 1166. Generally, an ALJ should order a consultative exam where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already contained in the record. *Id*. *See also* 20 C.F.R. § 416.919a (describing the situations that may require a consultative examination). Before purchasing a consultative examination, the agency considers existing medical reports, the disability interview form, and any other pertinent information in the record. 20 C.F.R. § 404.1519a(a); 20 C.F.R. § 416.919a(a). After considering this evidence, the agency "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." 20 C.F.R. § 404.1519a(b); 20 C.F.R. § 416.919a(b). This duty is not

triggered where sufficient evidence exists in the record to make a disability determination. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir.2008).

The Court finds that ALJ Burke did not err in not ordering a consultative examination. ALJ Burke considered all the medical records and the opinions of the medical consultants. There has been no argument that there is any inconsistency in the medical evidence concerning Ms. Todorova for which a consultative evaluation could have provided an explanation. There is no objective evidence to support Ms. Todorova's contention of the severity of her impairment; all of the evidence concerning severity comes from Ms. Todorova's testimony. It is unclear what, if any, useful information could have been obtained from a consultative evaluation conducted in 2016 given that Ms. Todorova's date last insured was December 31, 2009. The evidence shows that ALJ Burke carefully considered Ms. Todorova's evidence, and tried to focus Ms. Todorova on the period from onset date to date last insured. ALJ Burke explained to Ms. Todorova several times during the hearing that she needed to provide evidence of her impairments during the period between the onset date and the date last insured [AR 24, 34-36]. ALJ Burke also explained that information provided by Ms. Todorova for the period after her date last insured was not relevant to determining whether she could be determined to be disabled prior to her date last insured, [AR 24], and that she needed to provide information about a "continuous serious condition that lasts for a year or more." [AR 27]. ALJ Burke noted that Ms. Todorova was not represented by an attorney, and offered to continue the hearing to another day so that Ms. Todorova could secure legal representation. [AR 24].

"[T]he ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning," as "[t]he duty to develop the record is limited to fully and fairly develop[ing] the record as to material issues." *Hawkins*, 113 F.3d at 1168 (internal

quotations and citations omitted); *see also Glass*, 43 F.3d 1392, 1396 (10th Cir. 1994) ("This duty [of the ALJ to develop the record] is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning."). The ALJ has no duty to become a claimant's advocate. *Henrie v. United States Dep't of Health and Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

Ms. Todorova also contends that her mention during the hearing that she experienced cognitive difficulties triggered ALJ Burke's duty to gather information. The Tenth Circuit has explained that "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.* (citation omitted). Rather, "[o]rdinarily, the claimant must in some fashion raise the issue sought to be developed ... which, on its face, must be substantial." *Id.* (citations omitted). "[T]he claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* Ms. Todorova did not allege in her application that she was disabled due to any cognitive limitation. [AR 119]. There is no objective evidence in the record to support the contention that Ms. Todorova suffers from a cognitive impairment.

ALJ Burke did not err by failing to delve into the issue of cognitive limitations further than was done during the hearing. Nor did ALJ Burke fail to adequately develop the record.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing [Doc. 15] is hereby denied, and the decision of the Commissioner is affirmed.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**